UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DANA ADAMS, ET AL.                                                             Plaintiffs

v.                                             Civil Action No. 3:16-CV-218

FIFTH THIRD BANK                                                   Defendant

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Renewed Motion for Summary Judgment [DE 47] and Plaintiffs' Motion to File Their First Amended Complaint [DE 45]. The matters are ripe. For the reasons below, the Court will **GRANT** Defendant's Renewed Motion for Summary Judgment and **DENY** Plaintiffs' Motion to File Their First Amended Complaint.

### I.     BACKGROUND

In August 2015, Fifth Third Bank ("Fifth Third") sued Plaintiffs Dana Adams and Robert Jones in Kentucky state court to collect a note and mortgage (the "Kentucky suit"). [DE 1 at 1–2, ¶¶ 2, 13; DE 47-2 at 315]. In March 2016, Fifth Third initiated a "hard inquiry" into Plaintiffs' credit reports from both Trans Union, LLC ("Trans Union") and Equifax Information Services, LLC. [DE 1 at 1–2, ¶¶ 21, 23].

In April 2016, Plaintiffs filed the present complaint, alleging that Fifth Third violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA") by making inquiries into their credit reports without having a permissible purpose for doing so. [*Id*. at 1, ¶ 1, 5–6, ¶ 33, 34]. Plaintiffs sought damages under 15 U.S.C. § 1681n(b) and § 1681o. [*Id*. at 6–7, ¶¶ 56, 58]]. The Court granted Fifth Third's motion for judgment on the pleadings in part, dismissing Plaintiffs' claims under 15 U.S.C. § 1681o, but allowing Plaintiffs' claims under 15 U.S.C. § 1681n to

1

proceed. [DE 24 at 180]. In September 2017, Fifth Third moved for summary judgment on the remaining claim. [DE 27]. That motion was never ruled upon.

In March 2018, the parties deposed Jeremy Hejl, a senior manager of consumer collections at Fifth Third. [DE 47-4 at 335]. Plaintiffs then filed a Motion to File Their First Amended Complaint (the "Motion to Amend") under Fed. R. Civ. P. 15(a)(2). [DE 45]. Alleging that Trans Union is "responsible for characterizing Fifth Third's request for Plaintiffs' credit reports as hard credit requests" in violation of 15 U.S.C. § 1681b(c)(3), Plaintiffs moved to amend their complaint to add Trans Union as a party. [*Id.* at 256]. Plaintiffs also moved to "include facts and allegations that they were unaware of at the time they filed their complaint and which they only recently learned of." [*Id.*]. Fifth Third opposes the Motion to Amend as futile. [DE 46 at 272–73]

In April 2018, Fifth Third filed a Renewed Motion For Summary Judgment (the "Motion for Summary Judgment"), arguing that they initiated the credit inquiries in relation to the Kentucky suit, but that they had done so for the permissible purpose of "collecting the outstanding debt owed to it by Plaintiffs." [DE 47 at 310]. In Response, Plaintiffs argue that Defendant's inquiries were not made for a permissible purpose because Defendant "wanted Plaintiffs' credit reports for purposes other than collection of the account." [DE 52 at 356]. Fifth Third disputes Plaintiffs' characterization of the evidentiary record and case law. [DE 53 at 392–97].

## II. STANDARD

Summary judgment is proper on a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion may establish a genuine issue of fact by introduction of "any of the kinds of evidentiary

2

materials listed in Rule 56(c)." *Id*. at 324. Such evidence may include depositions, answers to interrogatories, affidavits, and admissions on file. *Id*. at 323. Further, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). All evidence must be construed in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Fed. R. Civ. Pr. 15(a)(2) states that absent the opposing party's consent, plaintiffs may not amend their pleadings without the Court's leave. A court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But the court "should deny a motion to amend where the proposed amended complaint could not withstand a Fed. R. Civ. P. 12(b)(6) motion." *Massingill v. Ohio Adult Par. Auth.*, 28 F. App'x 510, 511 (6th Cir. 2002) (citation omitted). In other words, a court "may deny a plaintiff leave to amend . . . when the proposed amendment would be futile." *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir.2006). When reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998), accept the complaint's factual allegations as true, *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994), and determine whether plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A proposed amendment adding defendants is also futile when summary judgment would be appropriate as to those defendants "for the same reasons that summary judgment is appropriate" as to the original defendants. *Pollard v. Blue*, Civil Action No. 4:06–CV–P134–M, 2009 WL

3160355, at *5 (W.D. Ky. Sept. 25, 2009) (concurrently granting summary judgment to existing defendants and denying a motion to amend to add defendants).

### III. DISCUSSION

**A.  Motion for Summary Judgment**

In 1968, Congress enacted the FCRA to promote "efficiency in the Nation's banking system and to protect consumer privacy." 15 U.S.C. § 1681(a). The "FCRA provides a private right of action against businesses that use consumer reports but fail to comply" with their obligations under that act. *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 53 (2007). "The FCRA places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 782 (W.D. Ky. 2003). Users of consumer reports may "access consumers' credit reports only if the access is for a 'permissible purpose.'" *Wells v. Craig & Landreth Cars, Inc.*, Civil Action No. 3:10–CV–00376, 2011 WL 1542121, at *2 (W.D. Ky. Apr. 22, 2011) (citing *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 815 (W.D. Ky. 2003)).

A "plaintiff must establish three elements in order to sustain a claim of improper use or acquisition of a credit report: (i) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose." *Bickley v. Dish Network, LLC*, Civil Action No. 3:10–CV–00678–H, 2012 WL 5397754, at *3 (W.D. Ky. Nov. 2, 2012) (citing *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934, 938 (S.D. Ohio 2008)); *see also* 15 U.S.C. § 1681b(f) (providing that a "person shall not use or obtain a consumer report for any purpose unless the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this

section"). The third element, "that the defendant did so without a permissible statutory purpose," is at issue here.

Under § 1681b(a), a consumer report may be furnished for several purposes. One such purpose is "to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." § 1681b(a)(3)(A). A consumer report may also be furnished if the user "otherwise has a legitimate business need for the information in connection with a business transaction that is initiated by the consumer." § 1681b(a)(3)(F)(i).

Plaintiffs argue there is a genuine issue of material fact as to Defendant's purpose for initiating the inquiries because Defendant's answer to Interrogatory No. 8 (inquiries were "in connection with collection of a Note owed by Plaintiffs to Fifth Third") is at odds with Mr. Hejl's deposition testimony (inquiries were in "connection with the state-court litigation.") [DE 52 at 354]. This fact is material, argue Plaintiffs, because "litigation is not a permissible purpose for obtaining a consumer credit report." [*Id.* at 357 (citing *Duncan v. Handmaker*, 149 F.3d 424, 425 (6th Cir. 1998)]. While Fifth Third agrees that it is generally impermissible to initiate a credit inquiry in support of litigation, it argues that if the litigation is a "debt-collection lawsuit," a credit inquiry in support of that litigation is permissible. [DE 53 at 396 (citing *Duncan*, 149 F.3d at 428)].

In *Duncan*, cited by both parties, the plaintiffs sued a bank for negligence. *Duncan*, 149 F.3d at 425. The bank's counsel initiated an inquiry into the plaintiffs' credit reports while preparing to depose them, and the plaintiffs sued the counsel under the FCRA. *Id.* at 426. The Sixth Circuit reversed the district court's grant of summary judgment to the defendant, holding that the credit inquiry was not for a permitted purpose, as "trial preparation generally does not fall

5

within the scope of § 1681b." *Id.* at 427 (citing *Mone v. Dranow*, 945 F.2d 306, 308 (6th Cir. 1991)). But the court in *Duncan* also noted that "a lawsuit occasionally may give rise to a 'legitimate business need' for a consumer report," and specifically mentioned that "legal dispute[s] . . related to the collection of a debt owed by the consumer" may occasion such a need. *Id.* at 427–28 (collecting cases in which district courts permitted the seeking of a consumer credit report as part of debt-collection litigation).

A district court in the Sixth Circuit has interpreted *Duncan* as permitting the procuring of a consumer credit report during discovery in litigation related to the recovery of consumer debt. *Geiling v. Wirt Fin. Servs., Inc.*, No. 14–11027, 2014 WL 8473822, at *19-20 (E.D. Mich. Dec. 31, 2014) (report and recommendation) ("The permissible purpose created by § 1681b(a)(3)(A) extends to attorneys' actions to collect through litigation."), *adopted by* 2015 WL 1529866 (Mar. 31, 2015).

District courts in other circuits similarly interpret § 1681b(a). *See, e.g., Korotki v. Attorney Servs. Corp.*, 931 F. Supp. 1269, 1277–78 (D. Md. 1996) (holding that § 1681b permitted initiating a credit inquiry for the sole purpose of determining an address at which personal service could be effected, so long as the underlying litigation involved the collection of a consumer debt); *Allen v. Kirkland & Ellis*, No. 91 C 8271, 1992 WL 206285, at *2 (N.D. Ill. Aug. 17, 1992) ("Preparation for litigation regarding a business debt qualifies as a permissible purpose under the broad language of § 1681b.").

Here, any discrepancy between Defendant's answer to Interrogatory No. 8 and Mr. Hejl's testimony is immaterial because, either way, the credit inquiries were made as part of a "legal dispute . . . related to the collection of a debt owed by the consumer," which is a permissible purpose under § 1681b. *See Duncan*, 149 F.3d at 428 ("So long as the lawsuit involves the

collection of a debt, the attorney is likely to procure the consumer report for a purpose analogous to those enumerated in § 1681b."). Therefore, there is no genuine issue of material fact as to whether the credit inquiries were initiated for a permissible purpose under § 1681b.

**B.     Motion to Amend**

Plaintiffs have moved to amend the Complaint. [DE 45]. In addition to several minor alterations that would not change the substance of the Complaint, Plaintiffs seek two significant amendments to the Complaint. First, Plaintiffs seek to add Trans Union as a party and allege that Trans Union "violated 15 U.S.C. § 1681b(c)(3) by classifying Fifth Third's requests for Plaintiffs' credit reports as hard inquires to its users and subscribers." [DE 45-1 at 265, ¶ 39]. Second, Plaintiffs seek to add facts, learned during Mr. Hejl's deposition, regarding the manner in which Fifth Third sought Plaintiffs' credit reports from Trans Union. [DE 45-1 at 264, ¶¶ 33–37].

Plaintiffs seek to add a claim against Trans Union for violation of 15 U.S.C. § 1681b(c)(3), which provides that "[e]xcept as provided in section 1681g(a)(5) of this title, a consumer reporting agency shall not furnish to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer." The issue is whether this claim is futile.

§ 1681a defines the terms used in the FCRA. § 1681a(m)(2) provides that "[t]he term 'credit or insurance transaction that is not initiated by the consumer' does not include the use of a consumer report by a person with which the consumer has an account or insurance policy, for purposes of . . . collecting the account." Therefore, if Trans Union provided Plaintiffs' credit reports to Fifth Third for the purpose of collecting debt owed by Plaintiffs to Fifth Third, Trans Union did not violate § 1681b(c)(3). As discussed, *supra*, as a matter of law, Fifth Third requested Plaintiffs' credit reports for the permissible purpose of collecting Plaintiff's debt under

7

§§ 1681b(a)(3)(A) and (F)(i). It would therefore be futile to amend the Complaint to add this claim against Trans Union.[1]

Plaintiffs also seek to amend their Complaint to add facts concerning the way Fifth Third initiated the credit inquiries. Their claim against Fifth Third, however, turns on whether Fifth Third's *purpose* for initiating the credit inquiries was permissible, not on the means they used to initiate the credit inquiries. [DE 1 at 6, ¶ 56]. The proposed factual amendment would therefore not impact this Court's reasoning in granting Fifth Third's Motion for Summary Judgment and it would be futile to permit Plaintiffs to amend the Complaint to add these facts.[2]

### IV. CONCLUSION

For the reasons set forth above, and being otherwise sufficiently advised, **THE COURT HEREBY ORDERS** that Defendants' Motion for Summary Judgment [DE 47] is **GRANTED** and Plaintiff's Motion to File Their First Amended Complaint is **DENIED** [DE 45].

---

[1] To the degree that Plaintiffs' proposed claim against Trans Union turns upon the distinction between "hard" and "soft" credit inquiries, the FDCA "makes no distinction between hard and soft inquiries; either is permissible if made for an appropriate purpose." *Bowling v. Scott Lowery Law Office, P.C.*, Civil Action No. 5:13–CV–00091–TBR, 2014 WL 3942280, at *2 (W.D. Ky. Aug. 12, 2014).

[2] The same reasoning applies to the various grammatical and other small changes Plaintiffs seek to make.